**REMAND / JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-4628-GW-PLAx | Date | August 5, 2021 |
|---|---|---|---|
| Title | *Estate of Jennifer Joan Vyden, et al. v. Vista Del Sol LTC, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Robert D. Jarchi | Kim S. Cruz |

**PROCEEDINGS:**    **TELEPHONIC HEARING ON PLAINTIFFS' MOTION FOR REMAND [11]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court grants Plaintiffs' motion to remand the matter back to the California Superior Court for Los Angeles County.

                                                                                                                                  :      06

Initials of Preparer    JG

***Estate of Vyden, et al. v. Vista Del Sol LTC, Inc.***, Case No. CV 2:21-cv-04628-GW-(PLAx)
Ruling on Motion for Remand

## I. Background

### A. Procedural Background

On May 3, 2021, the Estate of Jennifer Joan Vyden by and through its Successor-in-Interest David Vyden and David Vyden as an individual (collectively, "Plaintiffs") filed a Complaint in Los Angeles County Superior Court against Vista Del Sol LTC, Inc. ("Defendant"). *See* Docket No. 4-1. The Complaint contains five causes of action: (1) elder abuse and neglect (Cal. Welf. & Inst. Code §§ 15600 *et seq.*); (2) negligence/negligence per se; (3) violation of Residents ' Bill of Rights (Cal. Health & Safety Code § 1430(b)); (4) wrongful death; and (5) concealment. *See id.* On June 4, 2021, Defendant removed the case to federal court, claiming that federal courts have subject matter jurisdiction over the action because: (1) federal question jurisdiction exists due to complete preemption under the Public Readiness and Emergency Preparedness Act ("PREP Act"), (2) federal question jurisdiction exists because the case raised substantial federal issues, and/or (3) that removal is proper under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. *See* Docket No. 1, ¶¶ 14-93. Plaintiff has now filed a motion to remand.

The Court considered the exact arguments Defendant raises for subject matter jurisdiction in this type of case on July 1, 2021, remanding to state court the case of *Acra v. California Magnolia Convalescent Hospital, Inc.*, No. 5:21-cv-00898-GW (SHKx). *See Acra*, Docket No. 19. Defendant has not presented the Court with any controlling decision issued since the Court's *Acra* decision which would indicate that the Court erred in issuing its ruling in *Acra*. The short answer to this motion, therefore, is that it will be granted for the same reasons the Court set forth in *Acra*.

### B. Factual Allegations

The Complaint asserts the following:

Defendant is in the business of providing long-term custodial care as a 24-hour skilled nursing facility in Los Angeles, California. *See* Complaint ¶ 4. Jennifer Joan Vyden ("Decedent") was a resident of Defendant's facility from approximately 2017 through the time of her death in 2020, at the age of 80 years old. *See id.* ¶ 6.

On or about May 27, 2020, Defendant transferred Decedent to Cedars Sinai Medical

1

Center ("Cedars") for advanced testing and treatment. *See id.* ¶ 14. Prior to May 27, 2020, Decedent received substandard care with respect to her nourishment and general treatment, including by not having been properly provided fluids for an extended period of time to the point that she was suffering from dehydration and was malnourished prior to the time of transfer from Defendant's facility to Cedars, facts that Defendant concealed. *See id.* ¶¶ 12, 33, 64. Decedent's potential for rehabilitation at Cedars was noted as "poor." *See id.* Upon admission at Cedars, Decedent was also diagnosed with "low oxygen saturation" and "rapid breathing." *See id.* ¶ 15.

In addition, at this time cases of COVID-19 were present at Defendant's facility, and Defendant knew or should have known of COVID-19's presence. *See id.* ¶ 13. Defendant failed to take adequate measures to protect Decedent from contracting COVID-19 and concealed Decedent's exposure to an unreasonable risk of harm based on exposure to infected residents and staff. *See id.* ¶¶ 33, 64. Defendant acted with conscious disregard to Decedent's rights, health, and safety in numerous respects, including by, among other things: failing to follow, implement, and adhere to all CDC guidelines on how to protect and treat Decedent in light of the risk of COVID-19; failing to take all reasonable and necessary precautions to ensure that Decedent did not contract COVID-19; failing to test Decedent and other residents and staff for COVID-19 to quickly address and isolate any infected person(s) if necessary; and failing to provide its employees with adequate personal protective equipment and failing to ensure employees properly utilized that equipment. *See id.* ¶ 33(e), (l), (m), (q), (r); *see also id.* ¶ 49(e).

David Vyden, Decedent's son, learned immediately after transfer of Decedent to Cedars that Decedent was positive for COVID-19, despite visiting Defendant's facility on multiple occasions to check on his mother and despite being the point-of-contact for his mother's health. *See id.* ¶¶ 16, 66. Decedent's condition deteriorated rapidly, and she passed away on June 11, 2020. *See id.* ¶¶ 17, 57.

## II. Discussion

Plaintiffs' Complaint presents only claims under California law. Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The defendant bears the burden of establishing that removal is proper," and removal statutes are "strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

("[J]urisdiction must be rejected if there is any doubt as to the right of removal."). Here, Defendant asserts that the Court has federal question jurisdiction and/or that jurisdiction is proper as a result of the federal-officer removal statute.

### A. Federal Question Jurisdiction

Federal courts have original jurisdiction over all civil actions that arise under federal law. 28 U.S.C. § 1331. The presence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule makes a plaintiff the master of his/her complaint: it allows him/her to avoid federal jurisdiction by relying exclusively on state law. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13-14 (1983).

There are, however, cases where the well-pleaded complaint rule gives way to "complete preemption" by federal statute. The United States Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they "completely pre-empt" an area of state law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In those cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore is deemed to have arisen under federal law. *See Franchise Tax Bd.*, 463 U.S. at 24.

In response to Plaintiffs' motion, Defendant first argues that the Court has federal question jurisdiction because of complete preemption by the PREP Act. The PREP Act is invoked when the Secretary of the Department of Health and Human Services ("HHS") issues a declaration determining that a disease or other health condition constitutes an ongoing public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that there is such an emergency, he "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.*

Once invoked (as no one disputes occurred here), the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).  This immunity is broad.  It applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure."  42 U.S.C. § 247d-6d(a)(2)(B).  The PREP Act preempts state laws that create different standards regarding covered countermeasures[1]:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that –
>
>> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
>> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8).

"[C]omplete preemption for purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause

---

[1] "Covered countermeasures" under the PREP Act cover drugs, biological products, or devices that are designed to diagnose, mitigate, prevent, treat, cure, or limit the harm from the public health emergency.  42 U.S.C. § 247d-6d(i)(1), (7).  The HHS Secretary's COVID-19 Declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product."  Docket No. 17-9, at pg. 6 of 7.  "Administration" and "use" are not defined in the act, but the HHS Secretary's COVID-19 Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures."  *Id.*

of action." *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020) (citing *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018)), *cert. denied*, 2021 WL 2405350 (U.S. June 14, 2021).  Essentially, Congress must intend for the statute to "provide the exclusive cause of action."  *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 (2003).

"[M]any courts have held [that] the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures."  *See Stone v. Long Beach Healthcare Ctr., LLC*, No. CV 21-326-JFW-(PVCx), 2021 WL 1163572, at *5 (C.D. Cal. Mar. 26, 2021) (citing cases which "plainly hold that the PREP Act does not wholly displace state law claims that implicate healthcare entities and COVID-19" (quotation omitted)); *see also Golbad v. GHC of Canoga Park*, No. 21-CV-01967-ODW-(PDx), 2021 WL 1753624, at *2 (C.D. Cal. May 4, 2021) ("And, simply put, the PREP Act does not satisfy the Ninth Circuit's two-part complete preemption test."); *Padilla v. Brookfield Healthcare Ctr.*, No. CV 21-2062-DMG-(ASx), 2021 WL 1549689, at *4 (C.D. Cal. Apr. 19, 2021) (collecting cases and concluding that "[n]early every other federal court addressing the issue of complete preemption has found that the PREP Act is not a statute with complete preemptive effect"); *Riggs v. Country Manor La Mesa Healthcare Ctr.*, No. 21-CV-331-CAB-DEB, 2021 WL 2103017, at *2 (S.D. Cal. May 25, 2021) ("Although this exact issue does not appear to have been considered by an appellate court, district courts in the Ninth Circuit and around the country have consistently held that the PREP Act does not satisfy [the] requirements for complete preemption.").  This is the most Plaintiffs appear to have alleged here insofar as covered countermeasures are concerned.

Although Defendant cites two district court cases (only one from within this Circuit/District) that came out differently on the question of the question of complete preemption and consequential federal question jurisdiction, as the Court noted previously herein, no controlling decision has been issued since this Court's decision in *Acra*.  The Court therefore sees no reason to approach the issues covered in *Acra* differently here.

Specifically, the Court declines to defer to the HHS Office of the General Counsel's January 8, 2021 Advisory Opinion concerning whether the PREP Act is a complete preemption statute.  Again, a federal agency's interpretations of a statute in the form of opinion letters lack the force of law and are only "entitled to respect" to the extent they have the "power to persuade."  *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  The Court would agree with the other district courts holding

5

that the January 8, 2021 Advisory Opinion is not persuasive and therefore "entitled to minimal respect" because, *inter alia*, it does "not cite any legal support for the proposition that an exclusive federal administrative remedy is sufficient for complete preemption." *See Padilla*, 2021 WL 1549689, at *4-5 (quotation omitted); *see also Smith v. Colonial Care Ctr., Inc.*, No. 2:21-cv-00494-RGK-PD, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (same); *Stone*, 2021 WL 1163572, at *6 (concluding that the "HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the 'power to persuade'").

Moreover, as other courts within this district have noted, the intra-district decision Defendant relies upon "did not consider the Ninth Circuit's two-part complete preemption test." *See Golbad*, 2021 WL 1753624, at *3; *see also Estate of McCalebb v. AG Lynwood, LLC*, No. 2:20-cv-09746-SB-PVC, 2021 WL 911951, at *4 (C.D. Cal. Mar. 1, 2021). As for the district court decision from the Western District of Louisiana that Defendant relies upon, the Court again – as it did in its *Acra* decision – rejects that ruling as non-binding here. As such, the Court would decline to hold that the PREP Act is one of the rare statutes to which complete preemption applies. *See Hansen*, 902 F.3d at 1057 (the Ninth Circuit has observed that complete preemption is "rare"); *City of Oakland*, 969 F.3d at 905-06 (the Supreme Court has identified only three statutes that meet the complete preemption criteria).

Defendant next contends that federal question jurisdiction exists because Plaintiffs' claims raise substantial federal issues establishing federal question jurisdiction. Under *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308 (2005), state law claims can provide a basis for federal question jurisdiction if the claims "satisfies *both* the well-pleaded complaint rule *and* passes the 'implicate[s] significant federal issues' test," which "requires that the federal issue within a state-law claim be 'necessar[y], actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) (quoting *Grable*, 545 U.S. at 314); *see also City of Oakland*, 969 F.3d at 904 (noting that *Grable* line of cases concerns "a 'special and small category' of state-law claims" and that "[o]nly a few cases have fallen into this 'slim category'") (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006)). Here, the Court sees no indication that Plaintiffs' case rests on the affirmative use

6

or administration of any covered countermeasure under the PREP Act.  *See Smith*, 2021 WL 1087284, at *4 (Plaintiffs' allegations "that Decedent's injuries were caused by Defendant's failure to implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting its residents from exposure to COVID-19 . . . refer to policies and a failure to protect, not to any covered countermeasure, *i.e.*, drug, product, or device" (quotation omitted)); *Padilla*, 2021 WL 1549689, at *5 ("Defendant's policies regarding social distancing, use of medication for conditions unrelated to COVID-19, and reporting COVID-19 cases thus do not constitute covered countermeasures under the PREP Act.").

Additionally, PREP Act immunity relates to Defendant's *defense*, rather than the claims Plaintiffs allege.  "As such, the federal issue is not necessarily raised."  *Stone*, 2021 WL 1163572, at *7; *see also Padilla*, 2021 WL 1549689 at *6 ("[I]mmunity under the PREP Act is a defense, not a necessary aspect of Plaintiffs' state law claims."); *Thomas v. Century Villa Inc.*, No. 2:21-cv-03013-MCS-KS, 2021 WL 2400970, at *6 (C.D. Cal. June 10, 2021) (observing that "the PREP Act merely provides [Defendant] with a potential affirmative defense to Plaintiffs' claims" and therefore does not confer federal question jurisdiction); *McCalebb*, 2021 WL 911951, at *6 ("Indeed, Defendant fails to distinguish between the scope of preemption required to confer federal jurisdiction, on the one hand, and the federal defense of preemption, on the other.").  Defendant cannot remove this action to federal court based on a federal defense, including the defense of preemption.  *Franchise Tax Bd.*, 463 U.S. at 13-14.

Finally, as in *Acra*, the Court sees no proper basis for deferring to agency opinions regarding the propriety of *Grable*-based federal jurisdiction in this context.  *See Thomas*, 2021 WL 2400970, at *6 (Amendment Four and the Advisory Opinion do not persuade the court that the *Grable* doctrine grants federal jurisdiction over plaintiffs' state law claims); *McCalebb*, 2021 WL 911951, at *3 ("Neither the Secretary nor the OGC provides any significant analysis of *Grable*'s narrow holding and its two-pronged test.  Deference to the Secretary's jurisdictional assertion is not due, and adherence to his conclusory assertion is not warranted.").

The Court thus would conclude it does not have federal question jurisdiction over Plaintiffs' claims.

### B.  Federal Officer Jurisdiction

As was the case in *Acra*, Defendant also argues that the Court has jurisdiction over the case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal of an action against "any officer

(or any person acting under that officer) of the United States or of any agency thereof." Like in *Acra*, however, the Court would find that federal officer jurisdiction does not apply in the instant case. While the federal officer removal statute must be "liberally construed" in favor of removal and the words "acting under" are broad, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147, 153 (2007). "And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153. At best, that is what appears to be at issue here. As such, 28 U.S.C. § 1442(a)(1) does not apply here, where Defendant merely points to its alleged compliance with federal orders and directives pertaining to COVID-19. *See Thomas*, 2021 WL 2400970, at *7; *McCalebb*, 2021 WL 911951, at *6-7; *Golbad*, 2021 WL 1753624, at *2; *Smith*, 2021 WL 1087284, at *8.

### III. Conclusion

Accordingly, the Court would conclude that Defendant has not sufficiently-demonstrated this Court's subject matter jurisdiction over Plaintiffs' claims. Based on the foregoing discussion, the Court would grant Plaintiffs' motion to remand the matter back to the California Superior Court for Los Angeles County.